IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| LEGACY HEALTH SYSTEM; PEACEHEALTH; PROVIDENCE HEALTH & SERVICES - OREGON; LEGACY EMANUEL HOSPITAL & HEALTH CENTER, DBA Unity Center for Behavioral Health; ST. CHARLES HEALTH SYSTEM, INC., | ) ) ) ) ) ) ) ) | Ninth Circuit No. 23-35511<br><br>U.S.D.C. No. 6:22-cv-01460-MO |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | |
| PATRICK ALLEN, in his official capacity as Director of Oregon Health Authority; JAMES SHROEDER, | ) ) ) ) ) | |
| Defendants-Appellees. | ) | |

---

**BRIEF OF *AMICUS CURIAE* NATIONAL ALLIANCE ON MENTAL ILLNESS-OREGON IN SUPPORT OF APPELLANTS' OPENING BRIEF**

---

On Appeal from the United States District Court
For the District of Oregon
Before the Honorable Michael W. Mosman

Matthew J. Kalmanson, OSB No. 041280
HART WAGNER LLP
1000 SW Broadway, 20th Floor
Portland, OR 97206
Telephone: (503) 222-4499
mjk@hartwagner.com

<u>Of Attorneys for *Amicus Curiae* National Alliance on Mental Illness-Oregon</u>

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record certifies that NAMI-Oregon does not have any parent corporation or any publicly held corporation that owns 10% or more stock.

DATED this 11th day of December, 2023.

HART WAGNER LLP

By: /s/ *Matthew J. Kalmanson*

Matthew J. Kalmanson, OSB No. 041280
Of Attorneys for *Amicus Curiae*
NAMI-Oregon

# **TABLE OF CONTENTS**

RULE 29 CONFERRAL STATEMENT ...................................................................1

I.    Identity and Interest of the *Amici Curiae*. ......................................................1

II.    Authorship and Funding ...................................................................3

III.   Argument. ...........................................................................................3

    a.  Oregon is repeatedly violating the statutory and constitutional rights of individuals subject to civil commitment orders. ...............................................4

    b.  Plaintiffs' treatment of civilly committed patients is not "voluntary." ............6

    c.  NAMI-Oregon and its members support this lawsuit. ...................................11

IV.   Conclusion ...........................................................................................13

## TABLE OF AUTHORITIES

## CASES

*Hong Kong Supermarket v. Kizer,*
    830 F.2d 1078 (9th Cir. 1987) .............................................................12

*Humphrey v. Cady,*
    405 U.S. 504 (1972) .........................................................................5

*Isaccson v. Horne,*
    716 F.3d 1213 (9th Cir. 2013) .............................................................12

*Matter of S.R.J.,*
    386 P.3d 99 (Or. Ct. App. 2016) ..........................................................3

*Ohlinger v. Watson,*
    652 F.2d 775 (9th Cir. 1980) ................................................................5

*Oregon Advocacy v. Mink,*
    322 F.3d 1101 (9th Cir. 2003) ............................................... 4, 5, 6, 11

*State v. Allen,*
    149 P.3d 289 (Or. Ct. App. 2006) .........................................................8

*State v. B.B.,*
    245 P.3d 697 (Or. Ct. App. 2010) .........................................................8

*State v. M.A.,*
    371 P.3d 495 (Or. Ct. App. 2016) .........................................................8

*State v. M.R.,*
    202 P.3d 221 (Or. Ct. App. 2009) .........................................................8

*Washington v. Trump,*
    847 F.3d 1151 (9th Cir. 2017) .............................................................13

## RULES AND STATUTES

Fed. R. App. P. 29(a)(4)(E)........................................................................3

ORS 426.005(1)(f)(A), (B) .......................................................................7

ORS 426.130(1)(a)(C) ..............................................................................5

## OTHER AUTHORITIES

Amelia Templeton, April Dembosky and Carrie, Feibel, *Oregon and California Look for answers as homelessness overlaps mental health and addiction,* OREGON PUBLIC BROADCASTING, Apr. 1, 2023...................................................10

Amelia Templeton, April Dembosky and Carrie, Feibel, *When homelessness and mental illness overlap, is forced treatment compassionate?,* NATIONAL PUBLIC RADIO, Mar. 31, 2023 .........................................................................10

Amelia Templeton*, Portland police held woman for Mmental health check 2 months before she died,* OREGON PUBLIC BROADCASTING, Jan. 1, 2017 .............10

Debra A. Pinals, M.D., Doris A. Fuller, M.F.A., *The Vital Role of a Full Continuum of Psychiatric Care Beyond Beds,* Psychiatric Services 71:7, July 2020 ......................................................................................................6

Nicole Hayden, *High bar for hospitalizing mentally ill Portlanders without consent leaves those in great need on the street,* THE OREGONIAN, Nov. 26, 2023.....................................................................................10

1

## <u>RULE 29 CONFERRAL STATEMENT</u>

Counsel for NAMI-Oregon conferred with counsel for Defendants-Appellees, and Defendants do not oppose NAMI-Oregon appearing as an *amicus curiae* in this appeal.

## I. Identity and Interest of the *Amici Curiae.*

NAMI-Oregon is the state chapter of the National Alliance on Mental Illness. NAMI-Oregon is a grassroots, membership-governed organization. Membership consists almost entirely of individuals living with mental illness, family members supporting a loved one living with mental illness, and parents/caregivers raising school-age youth living with behavioral health issues.

NAMI-Oregon's mission is to improve the quality of life for individuals and families living with mental illness through education, support, and advocacy. Through sixteen local affiliates across Oregon, NAMI-Oregon annually serves 14,000 Oregonians with education classes, support groups, and workshops. NAMI-Oregon annually answers 2,000 phone calls and emails on the NAMI-Oregon Resource Helpline.

NAMI-Oregon's advocacy harnesses the lived experience of its members to pursue policy reforms and investments at the state, regional, and local levels. Among NAMI-Oregon's guiding principles are that every Oregonian across their lifespan deserves access to timely, accessible, and effective treatments and

2

supports.  Recovery should be an expectation, not an exception.  Examples of NAMI-Oregon's advocacy include passage of a sweeping health insurance parity bill in the 2021 Legislature and legislation in 2023 that will lead to a fully implemented 988 crisis system in Oregon.

NAMI-Oregon is interested in this case because its mission is to support and advocate on behalf of individuals living with mental illness, which includes individuals living with severe mental illness who are subject to civil commitment and aid and assist orders, or may become subject to such orders in the future.  It would benefit this Court to consider NAMI-Oregon's perspective, given its experience working with this specific population, and because its membership includes people who have been subject to civil commitment and aid and assist orders.

It is important for this Court to know that there are a diversity of viewpoints on the issues raised by Plaintiffs.  NAMI-Oregon supports this lawsuit, and believes that Plaintiffs' interests as described in the Amended Complaint, and the relief Plaintiffs seek, are aligned with what is in the best interests of civilly committed patients.

## II.    Authorship and Funding.

Pursuant to Fed. R. App. P. 29(a)(4)(E), NAMI-Oregon certifies that (1) no party's counsel authored the brief in whole or in part; (2) Plaintiffs have contributed money to fund the preparation and submission of this brief; and (3) no other person or entity contributed money to fund the preparation and submission of this brief.

## III.    Argument.

*Amicus* NAMI-Oregon's perspectives on the issues raised in the Amended Complaint are based on its experience working with and advocating for individuals living with mental illness and severe mental illness.  This includes the population who meet the "rigorous" requirements for involuntary civil commitment.  *Matter of S.R.J.,* 386 P.3d 99, 101 (Or. Ct. App. 2016).  NAMI-Oregon's membership includes such individuals, and some serve as program leaders for classes and support groups that NAMI-Oregon offers.

In this Brief, NAMI-Oregon assumes the truth of the allegations in the Amended Complaint about civilly committed patients and the acute care hospitals that treat them, not only because of the standard of review but, also, because those allegations are consistent with NAMI-Oregon's experiences.  Given the relief that Plaintiffs-Appellants ("Plaintiffs") seek, and Oregon's repeated constitutional and

4

statutory violations of the rights of civilly-committed patients, NAMI-Oregon urges this Court to reverse and allow this lawsuit to proceed.

>  **a.  Oregon is repeatedly violating the statutory and constitutional rights of individuals subject to civil commitment orders.**

In their Amended Complaint, Plaintiffs seek a declaration that OHA's "conduct, policy and practice" violates civilly committed individuals' constitutional and statutory rights, and a permanent injunction enjoining OHA from continuing its conduct, policy and practice.  (Am. Cmplt, ¶¶ 59.)  NAMI-Oregon agrees that this "conduct, policy and practice" exists, and that the relief sought is warranted and necessary.  OHA is legally responsible for these individuals whenever the State restricts their liberty, whether at the "aid and assist" or the civil commitment stage.

It has been more than twenty years since *Oregon Advocacy v. Mink,* 322 F.3d 1101 (9th Cir. 2003), and Oregon continues to fail its most vulnerable citizens.  *Mink* sought to remedy one stage in the cycle of hopelessness for many Oregonians who live with severe mental illnesses, as it focused on individuals who were charged with a crime but were unable to "aid and assist" in their defense. This Court affirmed an injunction issued by the District Court, which required the Oregon State Hospital ("OSH") to admit these defendants within seven days of a judicial finding that they were unable to aid and assist in their defense.  *Id.* at 1122.

*Mink* is an important case with a worthy goal. But *Mink* only ensured that individuals whose liberty was restricted due to aid and assist orders received just enough treatment to be processed by the criminal justice system. It did ***not*** address the repeated violations of the rights of Oregonians who have not been charged with a crime, and whose liberty interests are infringed by civil commitment orders.

The state of Oregon, acting through the Oregon Health Authority ("OHA"), is repeatedly violating the constitutional and legal rights of civilly-committed individuals, as described in Plaintiffs' Amended Complaint. If a court concludes that an individual meets the civil commitment standard, then it is OHA's obligation to provide appropriate care to that individual in order to justify the "massive curtailment of liberty." *Humphrey v. Cady,* 405 U.S. 504, 509 (1972); *see also* ORS 426.130(1)(a)(C) (authorizing courts to "order commitment of the person with mental illness to the Oregon Health Authority for treatment"). The absence of funds or facilities is no excuse. *Ohlinger v. Watson,* 652 F.2d 775, 779 (9th Cir. 1980).

OHA, both in policy and practice, is shirking its constitutional and statutory obligations to civilly committed patients. It is not providing them a "realistic opportunity to be cured or to improve [their] mental condition." *Mink,* 322 F.3d at 1121. Instead, OHA is illegally warehousing these individuals in acute care

community hospitals, which it knows do not provide long-term treatment in an unrestrictive environment.[1]

OHA argued below that it is obligated only to provide "minimally adequate" care and treatment. (OHA's Motion to Dismiss, p. 29.) This is incorrect, but even if it were not, OHA is providing most civilly committed patients *no* options for long term care. OHA instead is using acute care hospitals as an involuntary back-stop for its civil rights violations, and daring them to do something about it.

The District Court's dismissal of this lawsuit ensures only that the violations will continue unabated.

### b.     Plaintiffs' treatment of civilly committed patients is not "voluntary."

OHA argued in the District Court that Plaintiffs "are treating civilly committed persons on a voluntary basis," and therefore they did not have standing to complain about OHA's practice of confining these individuals at Plaintiffs'

---

[1] The court appointed expert in the *Mink* case has acknowledged that acute care community hospitals, when presented with patients with acute medical conditions, are expected to assess and stabilize those individuals, but not provide "all the care required for those patients to survive and recover." Debra A. Pinals, M.D., Doris A. Fuller, M.F.A., *The Vital Role of a Full Continuum of Psychiatric Care Beyond Beds,* Psychiatric Services 71:7 (July 2020), https://ps.psychiatryonline.org/doi/10.1176/appi.ps.201900516. It "results in psychiatric 'boarding,' a practice in which psychiatric patients whose condition merits hospital admission are held in the ED because no inpatient bed is available to admit them." *Id.*

facilities.  (Motion to Dismiss, p. 12.)  OHA put a finer point on this at oral

argument, stating that if Plaintiffs did not like the status quo, they "could quit."

From that, OHA argued that Plaintiffs "have voluntarily assumed care for these

patients on a long-term basis.  So I think that is a fatal problem for their standing."

(Dkt. #75, Tr. p.15.)

This is a frightening proposition.  It disregards the well-being of civilly

committed individuals and dehumanizes them.  If what is happening at acute-care

hospitals is "voluntary," then it would follow that Plaintiffs can ignore the civil

commitment orders, their own statutory duties, and basic ethics and humanity, and

kick their patients out to the street.  This would be ***disastrous*** for individuals who,

by definition, are dangerous to themselves and others.

It bears repeating that the standard for a civil commitment order is high

because of the deprivation of patients' liberty interests.  A court cannot issue a civil

commitment order unless it finds, by clear and convincing evidence, that the

person is "[d]angerous to self or others" or "[u]nable to provide for basic personal

needs that are necessary to avoid serious physical harm in the near future, and is

not receiving such care as is necessary to avoid such harm," *inter alia.*  ORS

426.005(1)(f)(A), (B).

A person is "dangerous" only if there is particularized proof of "serious and

highly probable threats of harm" to oneself or others, in the near future, that is life-

threatening or involves an inherently dangerous activity. *See, e.g., State v. B.B.,* 245 P.3d 697 (Or. Ct. App. 2010). The likelihood of future violence must be "highly likely" and not speculative. *State v. M.A.,* 371 P.3d 495 (Or. Ct. App. 2016). This burden can be met only through evidence of "extraordinary persuasiveness, and which makes the fact in issue highly probable." *State v. M.R.,* 202 P.3d 221, 223 (Or. Ct. App. 2009) (quoting *State v. Allen,* 149 P.3d 289 (Or. Ct. App. 2006)).

It is inexplicable for OHA to contend that hospitals can prevent their injuries by releasing these individuals to the street. It would mean that many individuals subject to a civil commitment order would receive ***no*** care, because OHA is not providing any. If the Plaintiffs adopted OHA's position, then it would only exacerbate the harm caused by OHA's failure to follow the law, and could be a death sentence for individuals for whom a court has found there to be a "highly probable" threat of harm to themselves.

Individuals who are subject to civil commitment orders almost always enter the "system" through Plaintiffs' emergency rooms ("ERs"). They can be brought there by the police because the person is homeless, or by family members who can no longer care for their loved one. If Plaintiffs refused to treat the acute care needs of these individuals when they arrived at the ER, or if Plaintiffs' response to a civil commitment order was to eject the patients from their premises—either of which

would violate numerous laws and ethical obligations—in many cases these individuals would end up living on the street.  This dangerous and stressful environment would only exacerbate the condition that first led them to the ER.

If these individuals managed to survive their time on the street, they undoubtedly would end up back in an ER or perhaps in jail.  If charged with a crime and found unable to aid and assist in their defense, then OHA *finally* would provide some modicum of appropriate, long-term care at OSH due to the *Mink* decision, but only until the individual became "well" enough to be processed by the criminal justice system.  Put colloquially, these individuals are "failed,

jailed, treated, and streeted."[2] They cycle through the jails, hospitals, courts and streets, over and over.

NAMI-Oregon disagrees that hospitals could or should close their doors to individuals suffering from severe mental illness who become subject to civil commitment orders, and disagrees that Plaintiffs are injured only due to their "voluntary" conduct. Individuals living with severe mental illness, their families, Plaintiffs, and many others have been and continue to be injured by OHA's dereliction of its constitutional and statutory obligations.

---

[2] There have been a number of recent articles describing the systemic failures for individuals who live with severe mental illness, and the consequences for them and others. *See*, *e.g.,* Nicole Hayden, *High Bar for hospitalizing mentally ill Portlanders without consent leaves those in great need on the street,* THE OREGONIAN (Nov. 26, 2023), https://www.oregonlive.com/politics/2023/11/high-bar-for-hospitalizing-mentally-ill-portlanders-without-consent-leaves-those-in-great-need-on-the-street.html; Amelia Templeton, April Dembosky and Carrie Feibel, *Oregon and California look for answers as homelessness overlaps mental health and addiction,* OREGON PUBLIC BROADCASTING (Apr. 1, 2023), https://www.opb.org/article/2023/04/01/oregon-california-when-homelessness-and-mental-illness-overlap-is-compulsory-treatment-compassionate/; Amelia Templeton, April Dembosky and Carrie Feibel, *When homelessness and mental illness overlap, is forced treatment compassionate?,* NATIONAL PUBLIC RADIO (Mar. 31, 2023) https://www.npr.org/sections/health-shots/2023/03/31/1164281917/when-homelessness-and-mental-illness-overlap-is-compulsory-treatment-compassiona; Amelia Templeton*, Portland Police Held Woman for Mental Health Check 2 Months Before She died,* OREGON PUBLIC BROADCASTING (Jan. 1, 2017), https://www.opb.org/news/article/oregon-portland-hypothermia-death-karen-batts/.

### c.     NAMI-Oregon and its members support this lawsuit.

The District Court also concluded that the Plaintiffs did not have third party standing because there purportedly were conflicts of interest between them and their civilly committed patients.  The court appeared persuaded by the *amicus* brief of Disability Rights Oregon ("DRO"), which supported the State's motion to dismiss and argued that it was in a "unique position to advocate for the rights of" patients subject to civil commitment orders.  The District Court then ruled: "If any party in this proceeding should be able to speak on behalf of civilly committed patients, DRO would likely be the one to do so."  (Order, p. 7.)

There are a diversity of viewpoints among organizations that advocate for the rights of this population.  DRO is intimately involved in the *Mink* case, but nobody in *Mink* is advocating on behalf of civilly committed patients.

*Mink* only addresses the deprivation of liberty when an individual with severe mental illness is charged with a crime and is in jail.  It does nothing to address the deprivation of liberty in the civil commitment process, when perhaps the time in jail could have been avoided *if* OHA had provided the required care. NAMI-Oregon disagrees that individuals who live with mental illness should prefer the status quo over a world where Plaintiffs' lawsuit proceeds.  (DRO Brief in support of Motion to Dismiss, p. 19.)   Individuals who live with severe mental illness have rights whenever their liberty is restricted.

12

NAMI-Oregon, as an organization that advocates on behalf of individuals who live with severe mental illness and whose membership includes individuals living with severe mental illness, does not support OHA's positions in this lawsuit. NAMI-Oregon believes that, on the issues raised in the Amended Complaint, the Plaintiffs' interests are aligned with those of civilly committed patients. A declaration that OHA is violating the constitutional and statutory rights of these individuals, and an injunction enjoining future violations, is needed. *See, e.g., Isaccson v. Horne,* 716 F.3d 1213, 1221 (9th Cir. 2013) (holding physicians had standing to challenge abortion law on behalf of their patients, when the injury is traceable to the challenged law, and a favorable decision "would redress the injury").

Thankfully, Plaintiffs are not treating their obligations as "voluntary," and therefore there is a relationship between them and patients who need appropriate, long-term care. *Hong Kong Supermarket v. Kizer,* 830 F.2d 1078 (9th Cir. 1987) (noting relationship between the litigant and the third parties whose rights they seek to assert must be not simply "fortuitous" but instead "a relationship between one who acted to protect the rights of a minority and the minority itself"). If Plaintiffs are successful in this lawsuit, then it would force OHA to comply with its obligations, which hopefully will result in better outcomes for patients living with severe mental illness and are subject to civil commitment orders. It also would

open more hospital beds for individuals with severe mental illness who have short-term, acute-care needs. Plaintiffs' and their patients' interests are aligned. *See, e.g., Washington v. Trump,* 847 F.3d 1151 (9th Cir. 2017) (allowing schools to assert rights on behalf of students because the "students' educational success if 'inextricably bound up' in the universities' capacity to teach them").

It is essential that this lawsuit proceed given the interests at stake and the very real injuries that the civilly committed population are suffering due to OHA's failures to satisfy its obligations to civilly-committed citizens.

## IV.  Conclusion

NAMI-Oregon urges this Court to reverse and remand.

Respectfully Submitted this 11th day of December, 2023.

HART WAGNER LLP

By:  /s/ *Matthew J. Kalmanson*
Matthew J. Kalmanson, OSB No. 041280
Of Attorneys for *Amicus Curiae*
NAMI-Oregon

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 2,653 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); or

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

DATED this 11th day of December 2023.

HART WAGNER LLP

By:   /s/ Matthew J. Kalmanson
       Matthew J. Kalmanson, OSB No. 041280
       Of Attorneys for *Amicus Curiae* NAMI-Oregon