IN UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LEGACY HEALTH SYSTEM; PEACEHEALTH; PROVIDENCE HEALTH & SERVICES – OREGON; LEGACY EMANUEL HOSPITAL & HEALTH CENTER, DBA Unity Center for Behavioral Health; ST. CHARLES HEALTH SYSTEM, INC., | Ninth Circuit No. 23-35511 U.S.D.C. No. 6:22-cv-01460-MO |
| Plaintiff - Appellants, | |
| v. | |
| PATRICK ALLEN, in his official capacity as Director of Oregon Health Authority; JAMES SCHROEDER, | |
| Defendants - Appellees. | |

**BRIEF OF *AMICUS CURIAE* SALEM HEALTH HOSPITALS & CLINICS IN SUPPORT OF APPELLANTS' OPENING BRIEF**

On Appeal from the United States District Court
For the District of Oregon
Before the Honorable Michael W. Mosman

Keith J. Bauer, OSB No. 730234
kbauer@pbswlaw.com
Michael J. Walker, OSB No. 055108
mwalker@pbswlaw.com
PARKS BAUER LLP
570 Liberty St. SE, Ste. 200
Salem, Oregon 97301
Telephone: 503-371-3502

Of Atttorneys for *Amicus Curiae* Salem Health Hospitals & Clinics

CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record certifies that Salem Health Hospitals & Clinics does not have any parent corporation or any publicly held corporation that owns 10% or more stock.

DATED this ___ day of January 2024.

PARKS BAUER LLP

By:

*/s/ Keith J. Bauer*
Keith J. Bauer, OSB No. 730234
Michael J. Walker, OSB No. 055108
Of Attorneys for *Amicus Curiae* Salem Health Hospitals & Clinics

# TABLE OF CONTENTS

RULE 29 CONFERRAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

AUTHORSHIP AND FUNDING CERTIFICATION . . . . . . . . . . . . . . . . . . 1

I.    Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.   Salem Health's Role . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  Inability to Discharge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V.   Lack of Acute Care Capacity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

VI.  Vital Role of Effective State Hospital and Secure Residential

         Treatment Facilities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

VII. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## **TABLE OF AUTHORITIES**

### CASES

*Eberhardt v. City of Los Angeles*,
62 F3d 1253, 1254-55 and 1257 (9th Cir 1995) . . . . . . . . . . . . . . . . . . . 4

*Legacy Emanuel Hospital & Health Center v. Allen, et al.*,
No. 6:22-cv-01460-MO, Doc. 88 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,3

*Thomas v. Christ Hosp. & Med. Crtr.*,
328 F3d 890, 894 (7th Cir 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

### STATUTES

42 USC § 1395dd(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

42 USC § 1395dd(b)-(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

42 USC § 1395dd(e)(1)(A)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

### RULES

Emergency Medical Treatment & Labor Act (EMTALA) . . . . . . . . 4

Fed. R. App. P. 29(a)(4)(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

### REGULATIONS

42 CFR § 489.24(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

OAR 309-033-0250(2)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

OAR 309-033-0250(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

OAR 309-033-0330(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## OTHER AUTHORITIES

Joe Parks, M.D. and Alan Q. Radke, M.D., M.P.H., *The Vital Role of State Psychiatric Hospitals*, National Association of State Mental Health Program Directors (NASMHPD) Medical Directors Council, July 2014, 23-2 . . . . . . . . . . . . . . . . . 9, 10

<h2>SALEM HEALTH'S BRIEF ON THE MERITS</h2>

<h3>RULE 29 CONFERRAL STATEMENT</h3>

Counsel for Salem Health Hospitals & Clinics conferred with counsel for all parties, and all parties consent to Salem Health Hospitals & Clinics appearing as an *amicus curiae* in this appeal.

<h3>AUTHORSHIP AND FUNDING CERTIFICATION</h3>

Pursuant to Fed. R. App. P. 29(a)(4)(E), Salem Health Hospitals & Clinics certifies that (1) no party's counsel authored the brief in whole or in part; (2) Plaintiffs have not contributed money to fund the preparation and submission of this brief; and (3) no other person or entity contributed money to fund the preparation and submission of this brief.

**I. Procedural History**

Pending before the Court in this case is an appeal from the district court's dismissal of a lawsuit filed by Legacy Health System, PeaceHealth, Providence Health & Services-Oregon, Legacy Emanuel Hospital & Health Center, and St. Charles Health System, Inc. against the Director of the Oregon Health Authority (OHA). *See Legacy Emanuel Hospital & Health Center v. Allen, et al.*, No. 6:22-cv-01460-MO, Doc. 88. Appellants' lawsuit sought injunctive and declaratory relief to challenge the OHA's failure to provide civilly committed patients with adequate long-term treatment. 2-ER-222. This Court has granted Salem Health Hospitals

and Clinics (hereafter "Salem Health") leave to appear as *amicus curiae*. Salem Health offers the following in support of appellants' position that the district court erred in dismissing appellants' claims against OHA.

**II. Salem Health's Role**

Salem Health operates hospitals in the Willamette Valley region of Oregon. Like appellants, Salem Health often has patients experiencing mental health crises arrive at its emergency department. Many of those patients have civil commitment holds which preclude Salem Health from releasing the patients until their condition improves and a safe discharge plan is in place.

Due to OHA's failure to accept the transfer of civilly committed patients, Salem Health is required to hold the patients for long periods at its hospital in an acute-care setting even after their acute symptoms have improved. As discussed in appellants' complaint, the acute-care setting fails to provide the long-term-treatment environment needed for the patients to recover and inhibits Salem Health from providing the best possible care to other patients in need of acute care. 2-ER-222.

Salem Health has suffered the same harm appellants have suffered due to OHA's failure to comply with its statutory duties to provide long-term care to persons civilly committed for mental health treatment. To the extent appellants' case were to proceed and appellants prevailed in obtaining relief against OHA, Salem Health and its patients would benefit because OHA would be required to

provide the long-term care these civilly committed patients need. All the parties are requesting is an order that OHA simply follow the law and do its job.

## III. Summary of Argument

In granting OHA's motion to dismiss, the district court concluded that appellants' continued certification to treat patients for short-term treatment rendered the care they provided voluntary. *Legacy Emanuel Hospital & Health Center v. Allen, et al.*, No. 6:22-cv-01460-MO, Doc. 88, (Opinion and Order pp. 6-7). Given that, in the district court's view, the care was provided voluntarily, appellants could not establish that OHA caused them an injury, and, therefore, appellants lacked standing. *Id*.

The district court's key conclusion, that the care was provided voluntarily, was erroneous for at least three reasons. First, hospitals in Oregon cannot discharge civilly committed patients onto the street as the district court has suggested. Second, hospitals in Oregon are required, under federal law, to provide care to all patients experiencing a mental health crisis in their emergency departments and, as long as those patients are unstable, are precluded from discharging those patients without an appropriate facility to accept the care of those patients. Third, even if appellants could refuse to care for civilly committed patients, there is not sufficient capacity in Oregon for other hospitals to accept those patients given OHA's failure to act.

/////

## IV. Inability to Discharge

Even if appellants failed to renew their acute mental health care certifications, federal law would still require appellants to hold civilly committed patients because OHA fails to provide a long-term facility to accept a transfer of those patients. When a person is civilly committed, a hospital cannot discharge the person until their condition is stabilized and there is a safe discharge plan in place. Under the Emergency Medical Treatment & Labor Act (EMTALA) a hospital emergency department must provide an "appropriate medical screening examination" to persons brought to the hospital. 42 USC § 1395dd(a). If the hospital determines that the person has an "emergency medical condition," the hospital must either provide treatment necessary to "stabilize" the person or "transfer" the patient to another medical facility that can provide appropriate treatment. 42 USC § 1395dd(b)-(c).

An "emergency medical condition" includes a condition that places the person "in serious jeopardy[.]" 42 USC § 1395dd(e)(1)(A)(i). An "emergency medical condition" also includes "psychiatric disturbances and/or symptoms of substance abuse[.]" 42 CFR § 489.24(b). Basically, EMTALA governs the care of persons brought to hospital emergency departments with mental health conditions. *See Eberhardt v. City of Los Angeles*, 62 F3d 1253, 1254-55 and 1257 (9th Cir 1995) (analyzing care provided to allegedly suicidal patient under EMTALA requirements).

"Once an emergency medical condition is detected, the hospital must act to stabilize the condition--whether physical or psychiatric--before the patient can be transferred or released." *Thomas v. Christ Hosp. & Med. Crtr.*, 328 F3d 890, 894 (7th Cir 2003). "[A] psychiatric patient is considered to be stable when he/she is no longer considered to be a threat to him/herself or to others." *Id*. at 893 (internal quotation marks omitted).

Thus, any person brought to a hospital emergency department with an acute mental illness that makes the person a threat to himself or others must be held for treatment at the hospital or transferred to another facility for appropriate treatment. Regardless of whether the person is on a civil commitment hold, the person cannot be discharged unless the acute condition is resolved or there is another facility willing to accept the transfer of the patient. With respect to patients needing long-term mental health treatment on an inpatient basis, there are not enough facilities to accept the transfer of those patients because OHA has failed to meet its statutory treatment requirements. Hence, appellants and Salem Health are required to hold and continue to treat civilly committed patients because federal law prohibits their discharge and OHA is unwilling to accept the transfer of these patients. Appellants cannot simply discharge a patient who continues to present a danger to himself or others, only transfer to an appropriate treatment setting is permitted.

/////

**V. Lack of Acute Care Capacity**

Even if appellants gave up their acute care certifications or had no legal obligation to care for mentally ill patients brought to their hospitals, there would be insufficient capacity at other Oregon hospitals to provide necessary acute treatment. Assuming appellants could legally refuse to treat civilly committed patients, Salem Health would have no capacity to care for those patients at its facilities.

Salem Health operates the only acute care mental health unit in the Mid-Willamette Valley of Oregon. Salem Health does not have a long-term treatment facility for civilly committed patients. Patients with long-term treatment needs can only be properly treated at the Oregon State Hospital or other appropriate long-term treatment facility.

Presently, Salem Health has 25 inpatient beds for treatment of patients with acute mental illness. Of those beds, **one** is currently available to accept new patients. Hence, if appellants refused to treat the patients they are currently holding, there would be essentially no inpatient treatment options in the region.

Additionally, Salem Health is currently operating under a heavy burden given OHA's failure to perform its duties. In Salem Health's case, OHA has not accepted a civilly committed patient to the Oregon State Hospital from Salem Health in the past three years. Over the past three years Salem Health has had 12 to 15 civilly

committed patients per year who should have been admitted to the Oregon State Hospital.

The average length of admission for patients on civil commitment holds at Salem Health is over 30 days. The average length of admission for non-committed mental health patients (acute care patients) at Salem Health is seven to nine days. Salem Health presently has capacity to accept only one new patient with acute mental illness.

Over the past year, civilly committed patients cumulatively have spent 723 hospital days at Salem Health. Over the past year, Salem Health has treated 27 patients on civil commitment holds.

Currently, there are five to six patients held at Salem Health on civil commitment orders who are eligible for transfer to the Oregon State Hospital or a secure residential treatment facility, *i.e.*, their symptoms are no longer acute. Salem Health also has two to three other patients with mental health conditions who would be best treated at the Oregon State Hospital.

Consequently, Salem Health has very limited capacity to accept patients needing acute mental health treatment. It would be impossible to accept the number of patients needing treatment if the primary hospitals in the Portland metro area and the Bend area ceased providing acute mental health care. Without appellants' continued certified status, patients seeking acute mental health care in Oregon would

8

be unable to find any care because there are not enough other facilities in the state with capacity to care for those patients.

Finally, Samaritan Health operates the next acute mental health care facility to the south of Salem Health. Specifically, Samaritan Health operates Good Samaritan Regional Medical Center (GSRMC). GSRMC has 16 inpatient beds for the treatment of patients with acute mental health needs.

In 2023, GSRMC had 31 civilly committed patients admitted to its acute treatment facility with an average length of stay of 29 days. GSRMC provided 854 bed days in 2023 to the treatment of civilly committed patients.

If Salem Health and Samaritan Health were to jointly give up their acute mental health certifications, as the district court had suggested, the state would lose over 10 percent of its inpatient acute mental health treatment capacity.

## VI. Vital Role of Effective State Hospital and Secure Residential Treatment Facilities

Finally, appellants brought this action because it is critical for OHA to do its job. OHA's lack of action has harmed both appellants and civilly committed patients in Oregon needing acute and long-term care. The mental health profession has recognized the important role state hospitals and secure residential treatment facilities play in the mental health treatment system. Specifically, the National Association of State Mental Health Program Directors has published the following:

"State psychiatric hospitals are a vital part of the continuum of recovery services, providing a treatment component in the healthcare system to assess, evaluate, and treat people with the most complex psychiatric conditions who are at risk of harm to self or others and cannot be effectively treated by existing available services in the community. Only those persons who cannot be safely and effectively treated in another setting should be considered appropriate for state psychiatric hospital admission.

"Treatment, stabilization, community re-integration, and public safety are the goals of state psychiatric hospitals. State psychiatric hospitals should be recovery-oriented, trauma-informed, and should be constantly seeking, developing, and implementing evidence-based practice and promising practice treatment approaches for service recipients with complex psychiatric conditions who are at risk of harm to self or others and cannot be effectively treated by existing available services in the community.

"* * * * *

"To ensure continuity of care, state psychiatric hospital services should be integrated with the continuum of community services so that persons can be served in the community wherever possible and appropriate. To accomplish this linkage and integration, state mental health authorities should create a shared safety net between state psychiatric hospitals and community providers as a tool to integrate the state hospital system into the public behavioral health system.

"* * * * *

"As part of the safety net, *state psychiatric hospitals should not refuse admissions from acute care settings and emergency departments* for service recipients who meet inpatient level of care criteria if a local acute care setting is unavailable. However, service recipients who no longer meet inpatient level of care criteria should be discharged to appropriate community-based settings as soon as possible."

Joe Parks, M.D. and Alan Q. Radke, M.D., M.P.H., *The Vital Role of State Psychiatric Hospitals*, National Association of State Mental Health Program Directors (NASMHPD) Medical Directors Council, July 2014, 23-25 (emphasis added).

**VII. Conclusion**

In sum, the district court erred legally and factually in concluding that appellants voluntarily accepted the care of civilly committed patients and, therefore, lacked standing. For the reasons discussed above, this Court should reverse the district court's decision in this case.

Respectfully submitted this 16th day of January 2024.

PARKS BAUER LLP

By:  */s/ Keith J. Bauer*
Keith J. Bauer, OSB No. 730234
kbauer@pbswlaw.com
Michael Walker, OSB No. 055108
mwalker@pbswlaw.com
Attorneys for Salem Health Hospitals
& Clinics dba Salem Health

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(B), I certify that:

This brief complies with the word limit of Cir. R. 32-1(b) because this brief contains 2362 words. This brief complies with the type size requirements of Fed. R. App. P. 32(a)(5) and the typeface requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Office 365 Times New Roman 14-point font.

DATED this 16th day of January 2024.

         PARKS BAUER LLP

By:  */s/ Keith J. Bauer*
   Keith J. Bauer, OSB No. 730234
   kbauer@pbswlaw.com
   Michael J. Walker, OSB No. 055108
   mwalker@pbswlaw.com
   Attorneys for Samaritan Health
   Services, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2024, I electronically filed the foregoing/attached document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit, via the Appellate CM/ECF System. Case participants who are registered CM/ECF users will be served via the Appellate CM/ECF system.

DATED this 16th day of January 2024.

PARKS BAUER LLP

By: */s/ Keith J. Bauer*
Keith J. Bauer, OSB No. 730234
kbauer@pbswlaw.com
Michael J. Walker, OSB No. 055108
mwalker@pbswlaw.com
Attorneys for Samaritan Health Services, Inc.